In re Arthur E. ARNOW, Debtor.

Arnold APPLEBAUM, et al., Plaintiff,

v.

Arthur E. ARNOW, Defendant.

Bankruptcy No. 888–81248–20.
Adv. No. 889–0083–20.

United States Bankruptcy Court,
E.D. New York,
at Westbury.

Oct. 8, 1993.

John E. Lawlor, Garden City, NY, for debtor-defendant.

Michael Jude Jannuzzi, Huntington, NY, for plaintiff.

Stan Y. Yang, Garden City, NY Office of the U.S. Trustee.

## DECISION AND ORDER ON MOTION FOR VACATUR OF ORDER OF DISMISSAL

ROBERT JOHN HALL, Bankruptcy Judge.

### PRELIMINARY STATEMENT

This matter comes before the Court upon a motion ("Motion") by Michael Jude Jannuzzi ("Movant"), attorney for the above-captioned plaintiff ("Plaintiff"), for an order vacating the Court's order, dated October 6, 1992 ("Dismissal Order"), dismissing the above-referenced adversary proceeding ("Adversary Proceeding") commenced by the Plaintiff and others against Arthur E. Arnow ("Respondent").

---

1. Pursuant to section 523(a)(2) of the Bankruptcy Code, an individual debtor is not granted a discharge from debts incurred by, for example,

---

The Court has jurisdiction over this case pursuant to section 157(a), 157(b)(1) of title 28, United States Code ("title 28") and the order of referral of matters to the bankruptcy judges by the United States District Court for the Eastern District of New York (Weinstein, C.J., 1986). This is a core proceeding pursuant to section 157(b)(2)(A), (I), (J) and (O) of title 28.

For the reasons set forth below, the Court holds that the Motion for a vacatur of the Dismissal Order, dated October 6, 1992, is **DENIED.**

### FACTS

On November 25, 1988, the Respondent filed a voluntary petition for bankruptcy relief under chapter 11 of title 11, United States Code ("Bankruptcy Code"). By order dated on or about February 8, 1989, the Court, on Respondent's motion, converted his chapter 11 case to one under chapter 7 of the Bankruptcy Code. By the filing of a complaint on May 5, 1989, Plaintiff and others commenced the Adversary Proceeding pursuant to which Plaintiff sought judgment declaring a certain debt non-dischargeable.[1]

A pre-trial hearing to take place before the Court on June 6, 1989 was noted on the Plaintiff's summons by the Clerk's Office. Thereafter, between June 6, 1989 and August 11, 1992, Movant and Respondent's attorney consented to no less than 13 adjournments of the initial pre-trial hearing.

On August 11, 1992, a pre-trial hearing was scheduled to take place before the Court; Movant, however, failed to appear. Respondent's attorney, who did appear, obtained an adjournment of the pre-trial hearing to September 17, 1992.

On September 17, 1992, Movant, *again, failed to appear.* Respondent's attorney, who again did appear, was directed by the Court to submit an order dismissing the Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7041 (which makes applicable Federal Rule of Civil Pro-

---

"false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2) (1993).

cedure 41). The Court also directed that the Adversary Proceeding be marked off the calendar with prejudice.

On October 6, 1992, the Court signed Respondent's attorney's proposed order (denominated a "Judgment and Order", and previously defined herein as the "Dismissal Order") which provided for dismissal of the Adversary Proceeding. Movant was subsequently served with a copy of the Dismissal Order by the Clerk's Office.

On November 9, 1992, the Court signed an order to show cause scheduling a hearing upon Movant's Motion for an order vacating the Dismissal Order.

In his affidavit submitted in support of the Motion, Movant provides no excuse for failing to attend both the August 11, 1992 and September 17, 1992 pre-trial hearings. Movant simply discusses his and Respondent's attorney's consensual adjournment, and the bases therefore, of the pre-trial hearing scheduled for July 2, 1992. Movant does attempt therein to explain why prior pre-trial hearings were adjourned numerous times; his affidavit is utterly bereft, however, of reasons for his absence in Court on the August and September dates, which are the subject of the Motion.

Respondent, contrarily to Movant, provides a lucid statement of the relevant dates and events.

According to Respondent's attorney, the July 2, 1992 pre-trial hearing was adjourned on consent to August 11, 1992. Respondent's attorney called Movant and informed him of the adjourned date. The two did not communicate again. On August 11, 1992, having not heard from Movant and noting Movant's failure to appear in Court, Respondent's attorney "took it upon [himself] again to adjourn the matter until September 17, 1992." Affirmation of John E. Lawlor in Opposition to Motion, dated December 15, 1992, at 6. Upon returning to his office, Respondent's attorney placed a telephone call to Movant's office to again inform him of the adjourned date. The Court is unaware of whether Respon-

dent's attorney left a message or noted that it was he who placed the call.

Respondent's attorney further confirms in his affidavit that on September 17, 1992, he appeared before the Court and again noted the absence of Movant. As stated above, the Court instructed Respondent to submit the Dismissal Order.

Movant confronts Respondent's attorney's version of the facts in his reply affidavit, dated January 25, 1993. Movant therein addresses, *for the first time*, the August and September dates. Movant asserts that his and his client's absence in Court on August 11, 1992 was the result of a telephone conversation with Respondent's attorney. This conversation was not raised in his Motion papers. Movant asserts that during this telephone conversation he *"asked ... [Respondent's attorney] ... to reschedule ... [the August 11, 1992 pre-trial hearing] ... to a mid-October date."* Reply Affidavit of Michael Jude Jannuzzi, dated January 25, 1993, at 5 (emphasis added). The allegation as to the existence of this conversation and request was repeated in a letter to the Court [2] from Movant which stated that Movant *"requested that [Respondent's attorney] put this matter over to mid-October"*. Letter of Michael Jude Jannuzzi, Esq. to the Court, dated March 8, 1993 (emphasis added). Whether this alleged request was actually agreed to was addressed in Movant's reply affidavit, as follows:

> [B]ecause of my trial schedule and because of the illness of my wife, who is also my legal associate, I informed the defendant's counsel that I would have difficulty blocking out large periods of time.
>
> Although the defendant's counsel seems to forget, we spoke in August and at that time I *asked,* only for a second time, for him to reschedule the conference for a mid October date. Instead, the matter was scheduled for September 17, 1992.

---

**2.** During oral argument on the Motion, the Court requested that issues relating to dates in

question be addressed and clarified in letter correspondence to the Court.

The defendant's counsel states that he called my office to tell me the date, but when I was not available, he hung up.

Apparently, the idea of leaving the date of the conference, a full month sooner than *agreed*, with my secretary did not appeal to him.

As I stated previously, I am responsible for maintaining my calendar schedule, however, I never thought the matter would be scheduled a month prior to the date *anticipated*.

Reply Affidavit of Michael Jude Jannuzzi, dated January 25, 1993, at 6 (emphasis added).

Respondent's attorney's sur-reply affirmation does not address this conversation, but rather speaks to the merits of the case.[3]

Respondent's attorney's letter to the Court also does not address the conversation or request, but states that Movant "inexplicably failed to attend" the August 11, 1992 pre-trial hearing. Letter of John E. Lawlor, Esq. to the Court, dated March 2, 1993.

In Movant's letter to the Court in response, Movant does not refer to an agreement. Rather, he voices how he expected Respondent's attorney to respond to his request, stating: "I ... requested that [Respondent's attorney] put this matter over until mid-October. Instead, Mr. Gilmore [appearing for Respondent's attorney's office] placed the matter on the calendar for September 17; a month sooner than *expected*." Letter of Michael Jude Jannuzzi, Esq. to the Court, dated March 8, 1993.

As to why any adjournment was requested by Respondent's attorney, Respondent's attorney affirms:

On the scheduled pre-trial date, August 11, 1992, the undersigned appeared by an associate, Michael P. Gilmore, and not having heard from Plaintiff's counsel, *took it upon ourselves again to adjourn the matter until September 17, 1992* as Plaintiffs failed to appear. This was done gratuitously and as a profes-

sional courtesy to a fellow member of the bar who might very well have inadvertently neglected to calendar the pre-trial conference. It should be noted that I am in no way, shape or form responsible for insuring the continued vitality of Mr. Jannuzzi's case and having my associate adjourn the pre-trial conference on August 11, 1992 was done strictly a[s] a matter of professional courtesy.

Affirmation of John E. Lawlor in Opposition to the Motion, dated December 15, 1992 at 6 (emphasis in original).

Thus, to summarize: the pre-trial hearing was adjourned on consent not less than 13 times from its original date to June 2, 1992; the June 2, 1992 pre-trial hearing was then adjourned on consent to August 11, 1992; Movant, not in his papers in support of the Motion, but in reply, alleges that during a conversation with Respondent's attorney, Movant requested that the August 11, 1992 pre-trial hearing be adjourned to a "mid-October date", Reply Affidavit of Michael Jude Jannuzzi, dated January 26, 1993, at 6; Movant, again in reply, states that September was a full month sooner than "agreed", *id.;* Movant then states that September was a month prior to the date he "anticipated", *id.;* lastly, Movant writes that September was a month sooner than "expected"; Letter of Michael Jude Jannuzzi, Esq. to the Court, dated March 8, 1993; Respondent's attorney writes that Movant's failure to appear was "inexplicable", Letter of John E. Lawlor, Esq. to the Court, dated March 2, 1993; Respondent's attorney appeared on August 11, 1992, Movant did not; Respondent's attorney obtained an adjournment of the matter to September 17, 1992; Respondent's attorney appeared on September 17, 1992, Movant did not; on this date, Respondent was directed by the Court to submit an order dismissing the Adversary Proceeding; the Dismissal Order was submitted, signed and subsequently served upon Movant; Movant received the Dismissal Order on October 19, 1992; this Motion was commenced by an order to show cause dated November 9, 1992.

---

**3.** The Court holds below that a discussion of the merits of the underlying case is not required

under Federal Rule 60.

Movant's Motion is made pursuant to Federal Rule of Civil Procedure 60 ("Federal Rules"), made applicable herein by Federal Rule of Bankruptcy Procedure 9024, which governs the right to relief from an order or judgment. Fed.R.Civ.P. 60. Specifically, Movant grounds his right to relief from the Dismissal Order upon "excusable neglect".

## DISCUSSION

Federal Rule 60(b)(1) provides for relief from an order under certain circumstances, including excusable neglect. *Id.*

In relevant part, Federal Rule 60(b)(1) provides:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgement, order, or proceeding for ... mistake, inadvertence, surprise, or excusable neglect....

Fed.R.Civ.P. 60(b)(1). Rule 60(b)(1) does not require an analysis of the merits of the underlying proceeding; accordingly, the Court holds that one is not necessary.

The United States Supreme Court has recently construed the term "excusable neglect". *See Pioneer Investment Serv. Co. v. Brunswick Assoc.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993).[4] In *Pioneer,* the Supreme Court directed courts to employ Federal Rule 60(b)(1) on an equita-

ble basis, "taking account of all relevant circumstances surrounding the party's omission." *Id.,* —— U.S. at ——, 113 S.Ct. at 1498. The Court also ruled that a court's inquiry should be focused upon "whether [the] attorney, as [the client's] agent, did all he reasonably could ..." to avoid the neglectful behavior. *Id.,* —— U.S. at ——, 113 S.Ct. at 1499.

In the instant matter, Movant asserts his failures to appear at the Court's pre-trial hearings in August and September were based upon excusable neglect. Our inquiry will accordingly focus upon whether Movant "did all he reasonably could" to avoid failing to appear for two scheduled pre-trial hearings, in light of the surrounding circumstances. *Id.*

Although Movant cites other reasons for his admittedly neglectful behavior, his allegation as to an agreement between himself and Respondent's attorney for an adjournment of the August pre-trial hearing to a specified date represents his only legally cognizable basis for relief.[5] The Court holds that the existence of an agreement is pivotal to whether Movant justifiably remained idle during August and September. If an agreement existed, then clearly Movant has demonstrated grounds for relief from the Dismissal Order due to excusable neglect.

The allegation as to the existence of this pivotal agreement, however, is not in Movant's papers in support of the Motion. As

---

**4.** The *Pioneer* decision was decided on March 24, 1993, after all papers were submitted and argument heard by the Court. But, since *Pioneer* offers guidance on the phrase "excusable neglect", and does not alter the Court's decision on the Motion, we will decide the Motion in light of it.

**5.** In his papers, Movant offers both his involvement in an unrelated jury trial and the illness of his pregnant wife (who was also his legal associate) as grounds for rendering excusable his neglectful behavior. Such circumstances, however, have failed to constitute grounds for relief due to excusable neglect. *See Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499 ("We give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date."); *Hanson v. First Bank,* 828 F.2d 1310, 1314–15 (8th Cir.1987) (abuse of discretion standard; employee turnover not excusable neglect under Bankruptcy Rule 9006(b)(1); *Clinkscales v. Chevron U.S.A. Inc.,* 831 F.2d 1565, 1569 (11th

Cir.1987) (neglectful behavior based upon attorney's busy practice does not constitute excusable neglect under Federal Rule 60(b)).

Moreover, Movant did not fail to appear for the August and September pre-trial hearings based upon "law office upheaval", but merely requested adjournments due to this upheaval. As discussed in the text which follows, Movant's failure to appear was based upon his negligent dependence upon an unconfirmed request for an adjournment, *not* upon law office upheaval.

Finally, the sentiment that Movant's client should not suffer for Movant's neglect has been spurned by the Supreme Court. "[A] client may be made to suffer the consequences of dismissal of its lawsuit because of an attorney's failure to attend a scheduled pre-trial conference." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1499 (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962)).

stated above, this alleged agreement was only raised in his reply affidavit.[6] Moreover, Movant's characterization of this agreement is repeatedly inconsistent. Movant originally speaks of an agreement in page 6 of his reply affidavit.[7] At page 5, he states that he "asked" Respondent's attorney to reschedule the pre-trial hearing to a mid-October date; an agreement was not mentioned. Then, two paragraphs later, he seemingly alleges the existence of an agreement when referring to the September date as "a full month sooner than agreed". In the following paragraph, however, Movant contradicts himself when he refers to the mid-October date as the "anticipated" date, rather than the "agreed" date. In his letter to the Court, Movant writes that he requested a mid-October date. In the following sentence, though, Movant characterizes the September date as being "a month sooner than expected", rather than as "agreed".

Movant's letter, his last correspondence with the Court and opportunity to establish cause for the relief requested, makes no reference to an agreement.

Movant never once simply states that he secured an agreement with Respondent's attorney.[8] Even if Movant's use of the word "agreed" was more than coincidental, and he actually was insinuating an agreement, his subsequent use of alternative words such as "anticipated" and "expected" belies his argument. The Court accordingly holds that no agreement between Movant and Respondent's attorney existed.

Therefore, there constituted no reason for Movant to believe that he could remain idle and depend upon Respondent's attorney to appear in Court and seek an adjournment. Movant's reliance upon this non-existent agreement was misplaced and inexcusable.

In light of the fact that Movant at best requested an adjournment, did not establish confirmation thereof, and failed to determine what occurred subsequent to his request,[9] the relief requested, premised upon excusable neglect, must be denied. This holding must hold true even pursuant to the elastic holding of *Pioneer*.

Accordingly, the Court holds that the Motion for a vacatur of the Dismissal Order, dated October 6, 1992, is **DENIED**.

---

6. Movant pleads in this manner notwithstanding applicable Federal Rules governing motion practice:

   An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought.

   Fed.R.Civ.P. 7(b)(1) (1993).

7. The portions of Movant's papers in which following quoted phrases appear are provided in the text above.

8. In fact, it was the Court, not Movant or Respondent, that attached significance to the possibility of an agreement between the attorneys and to Movant's one-time use of the word "agreed".

9. In the two month period between the purported agreement to adjourn and when Movant was served with a copy of the Court's Dismissal Order, Movant did nothing to inform himself of the adjourned date by, for example, contacting Respondent's attorney, the Courtroom Deputy, the Judicial Law Clerk, Chambers' legal secretary, or accessing the public computer database docket. Movant did not do all he reasonably could to avoid his neglect, *Pioneer*, nor can his neglect be characterized as "excusable".